CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
MAR 1 4 2008
JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

UNITED STATES OF AMERICA,

3:08mc00008

Plaintiff

Case No. 3:07CR00001

v.

Honorable Norman K. Moon

KEVIN ALFRED STROM,
Defendant

Honorable B. Waugh Crigler

---

John Justice, Cross-Plaintiff

v.

UNITED STATES OF AMERICA,
and ELISHA STROM,
         Cross-Defendants

## CROSS-COMPLAINT

Comes now John Justice, next friend of the defendant, Kevin Alfred Strom, and complains of Cross-Defendants United States of America and Elisha Strom that they have criminally damaged the Defendant Kevin Alfred Strom and the Cross-Plaintiff by their acts which are set forth below.

## JURISDICTION

This court has jurisdiction over this case and the parties, the Defendant being held

-1-

in confinement until the date set for sentencing of April 21, 2008.

## FACTS

The Defendant Kevin Alfred Strom (hereinafter Strom) has been confined for a year and two months in conditions that constitute cruel and unusual punishment in violation of his rights secured under the Constitution for the United States of America, a period of time which is limited to felonies, not lesser crimes.

His confinement has been under conditions that are psychologically damaging: 24-hour high intensity illumination in the continual surveillance of the jail staff at Albemarle Charlottesville Regional Jail until his removal to Central Virginia Regional Jail in Orange, where he is in a cell next to a prisoner who shouts incessantly, proclaiming that Strom is a homosexual and a child molester and that he will kill him if he can get his hands on him. Strom has been denied visitation by direct contact throughout his confinement and was restricted to two visits per month while in Charlottesville, a restriction that is far more limited than other jurisdictions. In Orange, his visits are restricted to one-half hour on Fridays between 9:00 and 11:00 a.m., four times per month, and "visiting" is through a glass pane with telephones provided. Friday the 29th of February is the first time he has seen any of his children during the period of his imprisonment.

The Court may be unaware that this is a political trial as well as a trial based on federal statutes. The political trial had its origin in marital conflict, a marriage that ostensibly began blissfully but became violent as Elisha Strom (hereinafter Elisha) expressed extreme jealousy and used physical violence against Strom resulting in injury that required his stepfather's being called to come twenty miles to take him to an emergency room.

Elisha forced Strom to quitclaim to her the house in Stanardsville, Greene County, by blackmailing him with threats of disclosure to his friends of videotapes of his activities which, she told him, had been made with cameras that she had placed in appropriate locations, and which were held as duplicates in other locations.

Strom had bought the house at Elisha's urging, which she said she would help pay for but did not keep employment to do so. Strom had provided the household expenses and sustenance for Elisha, her daughter and his children, bought a car for Elisha, sent her daughter to a private Christian school, paid for her membership in an exercise club, and shared the use of his computer with open access to it and to her personal website from his computer.

Elisha had caused Strom to sell his home in Rochester, Minnesota, and move to Virginia to be closer to her parents, though this meant that he would be more than a thousand miles from his children. Strom had moved his art works, family

heirlooms, personal library and life's work, and the political library of Dr. Revilo Pendleton Oliver, professor emeritus of antiquities at the University of Illinois in Urbana.

When Elisha seized the house and excluded Strom from it, she refused to allow Strom to take his personal property and the Oliver library. When Strom's Mother called her, Elisha said that Strom did not have any property in that house. Strom continued to give Elisha money for the mortgage, but she did not apply the funds to the mortgage and the property went into foreclosure. Elisha also received and signed and cashed check(s) that were made to Kevin Strom for the support of one of his children who is in the care of the Commonwealth.

Cross-plaintiff Justice bought the house at auction for the purpose of recovering Strom's property and the Oliver library, for which he is trustee. A month after the successful bid, Justice had obtained a mortgage commitment and the house became "his". Justice wrote to Elisha and demanded possession, by mail with Certificate of Mailing and by Certified Mail. The letter sent by certified mail was returned. Justice paid the attorney who closed the property transaction to evict Elisha from the house. Justice never saw the interior of the house although he was told later that he had a right to have done so.

In late February of 2007, Justice had selected a realtor to sell the house and they

met at the house so she could assess the merchantability of the property. Justice and the realtor were on the back porch looking in through the French doors when Elisha came around the house and said, "This is my property and you are trespassing." Justice said, "No, this is my property and you are trespassing." Elisha went around to the front and Justice and the realtor followed. Elisha had left the front door open and Justice entered while the realtor stayed a few feet behind on the walk beyond the steps. Elisha reappeared and demanded that Justice leave. Justice demanded to inspect the house. Elisha said that there is nothing belonging to Kevin Strom in the house. Justice said, "What about the books?" Elisha shrugged, implying deceitfully that she did not know what Justice was talking about. Elisha called the Sheriff of Greene County on a cell phone and a deputy arrived almost immediately. He informed Justice that he could not enter; that he had to give Elisha 24 hours notice, although Justice did not care if Elisha was a bad housekeeper. The deputy said that Justice could have inspected the house before purchase, but no one had advised Justice of the law. Justice told Elisha in the presence of the deputy that he gave her notice that he would be there at eleven o'clock the next morning. Elisha called someone and told them that they had to come today because he was here and they had to move everything. A small pickup with West Virginia plates appeared shortly thereafter with at least a driver

and passenger.

Justice was about to depart driving westward over the Blue Ridge when it occurred to him that Elisha's assertion that there was nothing in his house that belonged to Kevin Strom might well be true, but Dr. Oliver's library was trust property for which Justice was trustee. Justice had supportive documents faxed to Strom's Mother and went before receiving them to the Sheriff's office in Stanardsville where he filed a complaint for search warrant. The deputy said the Magistrate in Orange would hear the complaint by video conference and after a lengthy wait the Magistrate heard Justice's complaint for search warrant in which Justice argued orally that Elisha had adverse possession of his property and was stealing, or had stolen, property for which Justice was trustee, and asked for a sheriff's deputy to accompany him to determine whether the property was in the house or not. The Magistrate refused to issue a warrant. Justice said he hoped a recording was made of the hearing. The Magistrate asked why. Justice replied so he could appeal. The Magistrate said that Justice had failed to state a claim on which relief could be granted. Inasmuch as it was the weekend and Elisha had the Law on her side, Justice shook the dust of that place from his feet and departed over the Blue Ridge.

At the conclusion of her court-allowed adverse possession, Elisha took keys to the

house to Cross-Plaintiff's Attorney and stated that she had had the FBI inspect the house before locking it and giving him the keys. Presumably she meant Joint Terrorism Task Force member Brian O'Donnell from the Charlottesville Police who is serving with the FBI and to whom she alleged acts which resulted in Strom's being charged with violations of federal statutes. Elisha Strom has made the United States a party to her crimes.

Had Elisha Strom acted as a wife to Kevin Strom, rather than enticing him to view pornographic websites which she insisted on his viewing, and had she led him with the Christian precepts which she refused to discuss in marriage counseling, no one might have heard of the jealousy that brought about their estrangement and her intentional ruin of Strom's estate and reputation.

Elisha Strom's acts have damaged the Cross-Plaintiff in causing him monetary damage and inestimable loss of time and effort. Her theft of property for which he is trustee has irreparably damaged a treasure of books, many of them undoubtedly one of a kind, which were delivered to Dr. Oliver, and transported as his estate, in interstate commerce.

Strom was misled by Assistant United States Attorney William Gould. His plea agreement offered by the Assistant United States Attorney was knowingly obtained by fraud and deceit. Strom has been incarcerated under conditions that

amount to torture–24-hour high-intensity illumination with no privacy whatsoever, denial of visitation, denial of visitation with his children, imprisonment without bail in violation of the protections guaranteed under the Eighth Amendment to the Constitution for the United States (despite the knowledge of the Public Defender that David Knellinger, charged with trafficking in child pornography, §2252A(a)(2)(A), was released on his own recognizance in the Eastern District of Virginia until the conclusion of his case, 3:2006cr00126.)

Strom's torture and the possibility that the penalties attendant a conviction for having images on his computer that might be offensive to a jury, even though the images might be innocuous under the law, led him to accept a plea rather than go to trial. An attorney who shares Strom's political opinions, with whom Justice corresponded before taking this action, said, "Nobody pleads guilty to child-related charges as an easy way out. Nobody. He is guilty. Accept that fact." When Justice told this to Strom on February 29 when he made a visit with Strom's daughter and Mother to the jail in Orange, he said, "He is not a father. I would do anything to be with my children again. I have been told that I would probably be out in July." Having had dinner with Strom and his children, Justice can understand why; they are a joyfully happy family. They were unburdened by any psychological stresses at that time.

As to the allegation of fraud and deceit on the part of the Assistant United States Attorney, in reading the charge to which Strom was to plead guilty, he paused significantly at the "interstate commerce" and "knowingly" but Strom did not knowingly recognize the semantic significance.

Further, Strom has neither read nor been advised as to the consequences of Standing Order No. 07-1 which, as stated in the opening paragraph of the Order, "are adopted forthwith as additional standard conditions of probation and supervised release for all defendants sentenced in this district for the sex offenses listed in the corresponding tables:" and then goes on to list eleven conditions in Tier I (the level of offense which includes §2252A, subsections of which Strom was charged with violating with their accompanying penalties) which, as stated above, are *additional* standard conditions. Although Strom neither had the mens rea to violate many of those conditions before and would have no desire or compulsion to engage in such behavior in the future, the societal constraints are as onerous as having a gothic red letter A branded on his forehead.

Kevin Strom lacked mens rea; if he had images on his computer that are in violation of the statute, if he indeed was responsible for their being there, they were there, as he told his children in his letter written to them the day he was incarcerated, because he thought they were beautiful. He certainly did not know

that possession was prohibited or was punishable, or he would not have been involved. Kevin Strom is so law-abiding that he has never even had a traffic ticket.

Should Strom be sentenced to time served and released on April 21, the Assistant United States Attorney will likely suggest or demand that he be a registered sex offender, a felon based on time served with the loss of all rights and privileges that that entails, restrictions on his use of the internet, and preclusion of association with children, including his own. The AUSA does not even have to suggest such conditions; they are a standing order of this District.

WHEREFORE, the Cross-Plaintiff prays that this Honorable Court quash Defendant Strom's plea of guilt offered by the Assistant United States Attorney, and hold a hearing in camera with such supporting witnesses as he may call, as to the sufficiency of the evidence supporting the charges against Strom and as to his state of mind supporting or failing to support a knowing violation of the statute. Further, that the computer used by Strom's son which has never been implicated in the alleged crimes be returned to the son, and that the computer belonging to Strom, pursuant to §2252A(d)(2)(B), inasmuch as Strom was unaware of the

provisions for Affirmative Defense, be allowed at hearing on this matter in chambers before the Judge to have the allegedly objectionable files deleted or overwritten under his supervision so that they are not recoverable, and to have his computer, which contains his life's work, returned to him. Further, the Cross-Plaintiff prays that Elisha Strom be assessed damages and ordered to return the property which she has stolen and moved in interstate commerce, and assessed damages for the property that she has destroyed; and that the United States be assessed damages for losses of Strom, his parents and children, and the losses and damages to the Cross-Plaintiff and the property for which he is trustee.

Respectfully submitted,

*[signature]*

John Justice, in propria persona
1699 South 55th Ave
Cicero, Illinois 60804
708-656-3250

# CERTIFICATE OF SERVICE

I, John Justice, a non-attorney, certify that on March 12, 2008, I sent the foregoing to the Clerk of the Court by courier with the fee set forth in the schedule, served counsel of record at the addresses below by United States Postal Service and mailed courtesy copies to Magistrate Judge B. Waugh Crigler and Judge Norman K. Moon at their chamber addresses, with an accompanying Motion to Intervene.


Andrea L. Harris
Asst. Federal Public Defender
401 E. Market Street, Ste. 106
Charlottesville, VA 22902

William F. Gould,
Asst. United States Attorney
255 W. Main Street, Rm 130
Charlottesville, VA 22902